

**SIGNED this 28th day of November, 2007.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ARCHIE FRANCIS COX, | § | CASE NO. 06-11717-CAG |
| Debtor. | § | CHAPTER 13 |
| | § | |

### MEMORANDUM OPINION DENYING DEBTOR'S OBJECTIONS TO THE CLAIM NUMBERS 8, 9, AND 10 OF B-REAL, LLC

On October 2, 2007, the Court held a hearing on the following pleadings:

1) Debtor's Objection to Proof of Claim filed by B-Real, LLC as Claim #11 [sic] (the correct claim is #8) for $21,534.50 filed July 31, 2007 (Doc. # 22), Response of B-Real, LLC filed August 20, 2007 (Doc. #23);

2) Debtor's Objection to Proof of Claim filed by B-Real, LLC as Claim #9 for $13,336.75 filed July 31, 2007 (Doc. # 20), Response of B-Real, LLC filed August 20, 2007 (Doc. #24); and

3) Debtor's Objection to Proof of Claim filed by B-Real, LLC as Claim #10 for $17,515.59 filed July 31, 2007 (Doc. # 21), Response of B-Real, LLC filed August 20, 2007 (Doc. #25).

At the hearing, the attorneys for the Debtor and B-Real, LLC appeared and argued their positions. In all three objections, Debtor asserts that he has no contractual relationship with B-Real, LLC because no documentation was attached to the three proofs of claim filed by B-Real to show that claims of Chase Bank USA, N.A. were transferred to B-Real. Debtor does not assert that he does not owe the debts at issue.

B-Real argues it did not attach any documentation to its proofs of claim showing the transfer from Chase Bank to it because neither Bankruptcy Rule 3001(e) nor the case law interpreting this issue requires proof of the transfer of a debt to be attached if the proof of claim is filed after the transfer. Here, B-Real asserts it filed the original proof of claim under penalty of perjury and included a statement that it purchased the debt from Chase, thus, Debtor's counsel received notice of the transfer of ownership through the proof of claim filing.[1] Also, because Chase did not file a claim in this bankruptcy case, there should be no concern that the estate will pay two claims for each debt.

The Court has subject matter jurisdiction of the parties' dispute pursuant to 28 U.S.C. § 1334 and § 157. The matter is a core contested proceeding pursuant to 28 U.S.C. §§ 158(b)(2)(A) (matters concerning the administration of the estate), (b)(2)(B) (allowance or disallowance of claims), and (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate). The following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rules 7052 and 9014. Where appropriate, a finding of fact shall be construed to be a conclusion of law, and vice versa. For the reasons stated below, the Court determines that B-Real's amended claims should be allowed, and the Debtor's objections to the same be denied.

## FINDINGS OF FACT

1. The Debtor filed this chapter 13 case on October 26, 2006.
2. The bar date for filing claims was March 13, 2007.
3. The plan was confirmed March 20, 2007.

---

[1] The Court could find no statement in either the original or amended proofs of claim that B-Real purchased the debt from Chase.

2

4.      On October 26, 2007, Debtor filed his schedules of assets and liabilities with his petition. On Schedule F, unsecured non-priority claims, the Debtor listed the following debts:

a) a debt owed to Chase with an address in Wilmington, DE for a credit card debt incurred 6/23/1988 and under account number 4305870360230445 in the amount of $20,312.83. Debtor did not list this debt as contingent, liquidated, or disputed.

b) a debt owed to Chase with an address in Wilmington, DE for a credit card debt incurred 9/27/2004 and under account number 4417121056135125 in the amount of $13,336.75. Debtor did not list this debt as contingent, liquidated, or disputed.

c) a debt owed to Chase Bank Card Services, Inc. with an address in Wilmington, DE for a credit card debt incurred 5/4/2004 and under account number 4640-1880-1055-4914 in the amount of $16,000.00. Debtor did not list this debt as contingent, liquidated, or disputed.[2]

5.      On February 6, 2007, B-Real filed the following claims:

a)      Claim No. 8: the original unsecured nonpriority claim in the amount of $21,534.50 by B-Real, LLC/Chase Bank USA, N.A. for a credit card debt showing an account number XXXXXXXXXXXX0445. A short "Account Summary" was attached that shows nothing more than the last four digits of the Debtor's Social Security number, his name, his street address,[3] and the ending balance of $21,534.50.

b)      Claim No. 9: the original unsecured nonpriority claim in the amount of $13,336.75 by B-Real, LLC/Chase Bank USA, N.A. for a credit card debt showing an account number XXXXXXXXXXXX5125. A short "Account Summary" was attached that shows nothing more than the last four digits of the Debtor's Social Security number, his name, his street address, and the ending balance of $13,336.75.

c)      Claim No. 10: the original unsecured nonpriority claim in the amount of $17,515.59 by B-Real, LLC/Chase Bank USA, N.A. for a credit card debt showing an account number XXXXXXXXXXXX4914. A short "Account Summary" was attached that shows nothing more

---

[2] Debtor also lists a debt owed to Chase Bank Card Services, Inc. with an address in Wilmington, DE for a credit card debt incurred 6/1/1995 and under account number 4366-1630-4173-8218 in the amount of $6,507.00. Debtor did not list this debt as contingent, liquidated, or disputed. This debt is shown as having a co-debtor. The account number for this debt is not reflected on the claims filed by B-Real, so this debt is not at issue.

[3] All claims filed by B-Real, LLC show the Debtor's address as the same address he listed in his bankruptcy petition.

than the last four digits of the Debtor's Social Security number, his name, his street address, and the ending balance of $17,515.59.

6.  On August 16, 2007, B-Real filed the following amended claims:

a)  Claim No. 8: an amended claim for the original unsecured nonpriority debt of $21,534.50 by B-Real, LLC/Chase Bank USA, N.A. for a credit card debt showing an account number XXXXXXXXXXXX0445.  Attached to the amended claim are copies of five monthly statements from Chase Bank to the Debtor at his street address showing a redacted account number of 0445 and with an ending balance of $21,534.50.

b)  Claim No. 9: an amended claim for the original unsecured nonpriority debt of $13,336.75 by B-Real, LLC/Chase Bank USA, N.A. for a credit card debt showing an account number XXXXXXXXXXXX5125.  Attached to the amended claim are copies of five monthly statements from Chase Bank to the Debtor at his street address showing a redacted account number of 5125 and with an ending balance of $13,336.75.  Also attached is a First USA applicant info sheet from May 3, 2004.

c)  Claim No. 10: an amended claim for the original unsecured nonpriority debt of $17,515.59 by B-Real, LLC/Chase Bank USA, N.A. for a credit card debt showing an account number XXXXXXXXXXXX4914.  Attached to the amended claim are copies of five monthly statements from Chase Bank to the Debtor at his street address showing a redacted account number of 5125 and with an ending balance of $17,476.59.[4]  Also attached is a First USA applicant info sheet from September 24, 2004.

7.  B-Real filed its three amended claims after the Debtor filed his objections to the original claims but before a hearing was set on the objections.

CONCLUSIONS OF LAW

The necessary information to be included with a claim for credit card debt is a summary of the following information: the name and account of the debtor, in the form of a business

---

[4] The amount of the proof of claim is $39 more than the amount shown as owed on the 8/4/06 to 9/3/06 monthly statement attached to the amended proof of claim ($17, 515.59 vs. $17,476.59).  This $39 may be attributable to another late fee added to the balance before the Debtor's petition date of October 26, 2006, however, the reason for the difference is unknown.

4

record or other reliable formats, and, if included, an itemization of any charges for such items as interest, late fees, and attorney's fees. *See In re Griffin,* 2007 WL 1467145, at *1 (Bankr. W.D. Tex. 2007) (citing *In re Kemmer*, 350 B.R. 706, 715 (Bankr. E.D. Tenn. 2004) and *In re Cluff*, 313 B.R. 323, 332-34 (Bankr. D. Utah 2004)). Other courts have agreed that this list of information should be included with the claim. *In re Armstrong*, 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005); *In re Rochester*, 2005 WL 3670877, at *1 (Bankr. N.D. Tex. 2005) (noting that it is sufficient to attach "enough monthly statements so that the required information can be readily determined").

      A dispute exists among courts regarding the documentation that must be attached to a credit card debt claim for that claim to be granted prima facie evidence of the debt owed under Bankruptcy Rule 3001(c) and (f).[5] Because a claim for credit card debt is based upon a written contract and because state law governs, here Texas law, some courts have required a claim to include more documentation than a summary of the debt or monthly statements in order to meet the requirements of Bankruptcy Rule 3001(c), and, thus, be granted prima facie evidence of the validity and amount of the claim under Bankruptcy Rule 3001(f). The bankruptcy courts in the Northern District of Texas require, in addition to the account statements containing specific information, the creditor to prove ownership of the claim by attaching a "signed copy of the assignment and sufficient information to identify the original credit card account." *In re Armstrong*, 320 B.R. at 106; *In re Rochester*, 2005 WL 3670877, at *4 (Bankr. N.D. Tex. 2005) (for a claim based upon a writing, the underlying account documents and the assignment or transfer document are needed to comply with Rule 3001(c)); *In re Armstrong*, 347 B.R. at 584 (same, citing *Rochester* with approval). The courts in the Southern District of Texas require that a claim have attached to it either the "writings" on which the claim is based, e.g., the written contract, or an explanation why the writing cannot be attached, with "boilerplate" language that the documentation is too voluminous being insufficient to explain the failure to attach the writing. *See In re Tran*, 369 B.R. 312, 319 (S.D. Tex. 2007), aff'g 351 B.R. 440, 445 (Bankr.

---

[5] Bankruptcy Rule 3001(c) provides that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

S.D. Tex. 2006). The *Tran* court did not require the claimant to prove it was the assignee of the debt. *Id.* at 320. The courts from these two districts declined to grant prima facie effect to claims not having appropriate documentation but did not disallow the claims, instead, they required the creditors to produce supporting documentation to carry their burden of proof in the face of objections. *In re Tran*, 369 B.R. at 318; *In re Armstrong*, 320 B.R. at 105; *In re Rochester*, 2005 WL 3670877, at *1; *In re Armstrong*, 347 B.R. at 584. This reasoning is followed by other courts as well. *In re Kemmer*, 315 B.R. at 716 (declining to disallow claim when faced with a groundless objection in which debtor objected to the claim for insufficient documentation but had included the claim in his schedules); *In re Relford*, 323 B.R. 669, 676, 679-80 (Bankr. S.D. Ind. 2004) (declining the disallow the claim when sufficient documentation was not attached, but allowing the court to consider other information such as the debtor's schedules, when determining the merits).

For this specific situation, this Court declines to follow the additional requirement that proof of the assignment be attached to the claim for the claim to provide prima facie evidence of the debt owed. The Court is guided by the text of Bankruptcy Rule 3001(e)(1) which does not specifically require any evidence of the transfer to be part of the claim if the debt is transferred before a proof of claim is filed. In such a situation, only the transferee or indentured trustee can file the proof of claim. In contrast, Rule 3001(e)(2) requires evidence of a transfer to be attached to the claim if the claim is transferred after the original creditor filed a proof of claim. *See In re Gonzalez*, 356 B.R. 905, 907 (Bank. S.D. Fla. 2006); *In re Griffin*, 2007 WL 1467145, at *2 (citing *Gonzalez*). Additionally, this Court finds persuasive another court decision that based its decision on the reasoning stated in the Advisory Committee Notes to the 1991 amendments to Rule 3001. *See In re Relford*, 323 B.R. 669 at 680-81. The Notes state that subdivision (e)(1) was "amended to limit the court's role to the adjudication of disputes regarding transfers of claim. If a claim has been transferred prior to the filing of a proof of claim, there is no need to state the consideration for the transfer or other evidence of the transfer...." *Id.* As additional grounds, the *Relford* court noted that the creditor, by its arguments, could essentially ask the court to take judicial notice of the debtor's schedules as additional evidence for its claim, in effect, resting on the debtor's schedules as additional evidence of the validity and amount of the claim. *Id.* at 676, 680. Also, that court considered the burden placed on creditors, as well as

6

debtors and chapter 13 trustees, if the creditor was required to attach voluminous documentation to support its claim and then the debtor and the trustee would be required to go through this documentation to determine each claim's validity. *Id*. at 674. The ability to file summaries would not relieve the creditor of producing all documentation, irregardless of its volume, if requested by the debtor or trustee. *Id.* Likewise, Official Form 10, the official claim form, "allows for attachment of a summary of the claim, which falls in line with Federal Rule of Evidence 1006, allowing voluminous documentation to be 'presented' in the form of a chart, summary, or calculation." *Id.* As a further grounds for allowance, claims are signed under a threat of criminal prosecution if a fraudulent claim is filed, making a claimant subject to a fine up to $500,000 or imprisonment for up to 5 years or both under 11 U.S.C. §§ 152 and 3571. The claimant's signature as owner of the claim should be sufficient unless a debtor has reason to believe that the claimant is not the owner or assignee. *See In re Gonzalez*, 356 B.R. at 907.

Here, the Debtor correctly objected to the three claims which were originally filed with little supporting documentation, certainly insufficient documentation to constitute prima facie evidence of the debts owed. After the Debtor filed his three objections, B-Real amended the three claims to attach several months of account statements that clearly "belong" to the Debtor: the monthly bills from Chase card member services reflect his name, his address, have the same last four digits of the account numbers he listed on his schedules for the three subject credit card debts, and are in amounts somewhat similar to the three amounts he scheduled as owed to Chase Bank and which he did not dispute.[6] One debt listed was $20,312.83 with 0445 as the last four digits of the account number, similar to the $21,534.50 filed as claim number 8 and with the same last four account number digits; a second debt was listed as $11,034.00 with 5125 as the last four digits of the account number, similar to the $13,336.75 filed as claim number 9 with the same last four account number digits; and a third debt was listed for $16,000 with 4914 as the last four digits of the account number, similar to the $17,515.59 filed as claim number 10 with the same last four account number digits. Additionally, all of the claims, as originally filed and

---

[6] The Court can take judicial notice of the Debtor's schedules, filed in the case under oath. *See* F.R.E. 201(c) ('[a] court may take judicial notice, whether requested or not."). Also, a debtor's listing of a debt in his schedules which were signed under penalty of perjury "constitutes a party-opponent admission under Federal Rule of Evidence 802(d)(2) and must be rebutted with probative evidence that the listed claims are not actually owed." *In re Kemmer*, 315 B.R. at 716 (citing *In re Cluff*, 313 B.R. at 339-40)).

7

as amended, show the claimant as B-Real, LLC/Chase Bank USA, N.A., and were signed by an agent of B-Real, LLC, making it subject to a fine up to $500,000 or imprisonment for up to 5 years or both under 11 U.S.C. §§ 152 and 3571 should the claimant present fraudulent claims.

The amended claims were on file at the time of the hearing held in this case. The basis for the Debtor's objections was that he did not owe B-Real, LLC; he did not contest that he did not owe the debts. The amended claims provide sufficient information for the Debtor to determine the claims represent three debts he scheduled as owed to Chase Bank without dispute. There is no confusion. There are no duplicate claims filed. The amended claims constitute prima facie evidence of the three debts owed. There was no need for the assignment from Chase Bank to B-Real, LLC to be attached to the claims. ***See In re Habiballa***, 337 B.R. 911, 915-16 & n.1 (Bankr. E.D. Wis. 2006) (The court granted prima facie status to claims having an attachment that included the original creditor's name, debtor's name, account number, breakdown of the principal and interest, last payment date, and charge off date because the summary substantially complied with Rule 3001(c) and Official Form 10 but did not include the credit card agreement, monthly statements, or the transfer agreement.).

The burden of going forward with the evidence then shifted to the Debtor to produce evidence to rebut the prima facie status of the claims. The Debtor introduced no evidence concerning the merits of the claims and, therefore, the claims are allowable. Following the reasoning stated above, the Debtor's objections to the three claims are denied without prejudice to the Debtor's right to file subsequent objections objecting to the claims on other grounds. A judgment consistent with this opinion will be entered.

IT IS SO ORDERED.

###